**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | Chapter 7 |
| | : | |
| MICHAEL A. CARR, | : | |
| | : | **Bankruptcy No. 16-18870-AMC** |
| DEBTOR | : | |
| _____ | : | |
| | : | |
| ANDREW R. VARA, | : | |
| | : | |
| PLAINTIFF | : | |
| | : | **Adv. Proc. No. 19-00176-AMC** |
| V. | : | |
| | : | |
| MICHAEL A. CARR, | : | |
| | : | |
| DEFENDANT | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

## I.    INTRODUCTION

In this adversary proceeding, plaintiff, United States Trustee for Regions 3 and 9,

Andrew R. Vara ("U.S. Trustee"), seeks a revocation of the discharge granted to defendant,

Michael A. Carr ("Debtor"), under 11 U.S.C. § 727(d)(2) ("Section 727(d)(2)") on the basis

that the Debtor, allegedly, knowingly, and fraudulently failed to disclose certain property he

acquired or became entitled to acquire constituting property of the estate.

Ultimately, the Court finds that the U.S. Trustee has failed to prove a cause of action

under Section 727(d)(2) because he presented no evidence demonstrating that, during the

post-petition period, the Debtor acquired or became entitled to acquire any property of the

estate which he did not disclose.

## II.        FACTUAL AND PROCEDURAL BACKGROUND

By way of background, on December 29, 2016, the Debtor filed a voluntary petition

under chapter 7 of title 11 of the United States Bankruptcy Code ("Bankruptcy Code"), along

with Bankruptcy Schedules A through J, a Statement of Financial Affairs, and other required

documents (collectively, the "Original Filing").  Case No. 16-18870 ECF No. ("ECF") 1 Ch.

7 Voluntary Petition; ECF 4 Form 122A-1.  The Original Filing referenced, *inter alia*, the

following in the Debtor's Schedule A/B:

- Debtor's deposits of money in item 17, valued collectively at $148,272.53.  ECF

    1 Ch. 7 Voluntary Petition ¶¶ 16, 17.

- In Item 17.4, a BB&T joint checking account shared by the Debtor and his wife

    ("Debtor Checking Account"), containing $17,941.42.  ECF 1 Ch. 7 Voluntary

    Petition ¶ 16.

- Debtor's interests in incorporated and unincorporated businesses in item 19,

    including, *inter alia*, a 50% ownership interest in C&M Student Housing, LLC

    ("C&M"), and a 50% ownership interest in 4089 Pechin Street, LLC ("Pechin").

    ECF 1 Ch. 7 Voluntary Petition ¶¶ 17, 18.

In the Original Filing, both the Debtor's Schedule A/B and Schedule C valued the

Debtor's interests in C&M and Pechin at $0.00 each.  ECF 1 Ch.7 Voluntary Petition ¶¶ 25,

26.  *See also* Tr. Transcript ¶ 20.  The Debtor's business partner, C.J. Ferraro ("Mr.

Ferraro"), held the other 50% ownership interests in C&M and Pechin, respectively.  *See*

Case No. 19-00176 ECF No. ("Adv. ECF") 75-1 ¶¶ 15, 18; Tr. Transcript ¶ 47.  As of the

petition date, C&M owned two properties: (i) 423 North 40th Street Philadelphia, PA ("40th

Street Property") and (ii) 3503-05 Haverford Avenue, Philadelphia, PA ("Haverford Avenue Property"). Adv. ECF 75-1 ¶ 16. Tr. Transcript ¶ 48.

On December 30, 2016, Lynn E. Feldman was appointed as the chapter 7 trustee for the case ("Trustee"). ECF 5. On or around January 27, 2017, the Debtor received the "Chapter 7 Standard Request For Documents For 341 Meeting" ("Standard Requests") from the Trustee. *See* Ex. J-4. Beginning on January 30, 2017, through February 8, 2017, the Debtor sent the Trustee twenty-six documents. *See* Ex. J-5–J-30.

The 2015 tax returns from C&M and Pechin were provided, among other documents, in response to the Standard Requests from the Trustee. The 2015 C&M tax return reflected "loans from partners" in the amount of $142,469.00, Ex. J-27 ¶ 5, and the 2015 Pechin tax return reflected "loans from partners" in the amount of $17,057.00, Ex. J-28 ¶ 5.

Both C&M and Pechin have substantively identical operating agreements (collectively, "Operating Agreements"). *See* Exs. J-191, J-192. The Operating Agreements at Article IV, Section 4.03 governing "Capital Contributions, Advances by Members" provide:

> [i]f the company does not have sufficient cash to pay its obligations after making commercially reasonable attempts to borrow the funds a Member shall not be required to make additional Capital Contributions to the Company. However, any Member(s) that may agree to do so with the consent of the Managers may advance all or part of the needed funds to or on behalf of the Company. An advance described in this Section 4.03 constitutes a loan from the Member to the Company, bears interest at the Prime Rate from the date of the advance until the date of payment, and is not a Capital Contribution. *See* Exs. J-191–J-192.

On February 8, 2017, the first meeting of the creditors was held pursuant to Bankruptcy Code Section 341(a) ("Initial 341 Meeting"), ECF 11, and later continued to March 22, 2017, ECF 14. During the Initial 341 Meeting, the Debtor was not asked about C&M or Pechin. Ex. J-31.

Meanwhile, on February 15, 2017, C&M sold the 40th Street Property for $1,400,000.00, which is reflected in the Settlement Statement for the transaction.  Adv. ECF 75-1 ¶ 16.  *See also* Exs. J-75, J-203.  After C&M sold this property, the net proceeds in the amount of $365,000.00 were used by C&M to purchase another property at 7620-22 Ridge Avenue, Philadelphia, PA ("Ridge Avenue Property").  Adv. ECF 75-1 ¶ 17.  *See also* Tr. Transcript ¶64.  The Debtor was not personally paid any of the net proceeds from the sale of the 40th Street Property.  Tr. Transcript ¶ 67.

On February 17, 2017, the Trustee requested that the Debtor provide additional documents, Ex. J-32, and by April 6, 2017, the Debtor had sent fourteen documents to the Trustee in response to that request.  *See* Exs. J-33–J-45.  The Trustee then requested supplemental documents on April 6, 2017, and the Debtor sent seventeen documents in response by April 20, 2017.  *See* Exs. J-48–J-64.  Again, on April 27, 2017, the Trustee emailed the Debtor requesting documents the Trustee believed had not been provided yet.  *See* Ex. J-65.  On April 28, 2017, the Debtor responded addressing each of those requested documents.  *See* Ex. J-66.

The continued meeting of creditors was rescheduled to May 1, 2017 ("Continued Meeting of Creditors").  At the Continued Meeting of Creditors, when the Debtor was asked whether he had received any distributions from C&M within the last four years, he responded "nope [sic]."  *See* Ex. J-75 at 59:50.  Yet prior to filing this chapter 7 petition, the Debtor had withdrawn $50,000 in funds from C&M's Citizens Bank bank account ("C&M Checking Account") on November 30, 2016, and transferred the funds to the Debtor Checking Account.  Tr. Transcript ¶¶ 27, 58.

The Debtor also disclosed the February 2017 sale of the 40th Street Property at the Continued Meeting of Creditors, *see* Ex. J-75, and the Settlement Statement, *see* Ex. J-203, corroborated the Debtor's testimony.

On May 3, 2017, Trustee's counsel sent Debtor's counsel a request for additional documents, Ex. J-76, all of which the Debtor provided in response. *See* Exs. J-77–J-92. On May 18, 2017, the Trustee's accountant requested additional documents to supplement the Trustee's previous request. Ex. J-93. By email on May 31, 2017, Debtor's counsel responded to each of the requests, Ex. J-94, and the final round of documents was sent to the Trustee's accountant on June 1, 2017, *see* Exs. J-98–J-101.

On September 6, 2017, the Court granted the Debtor a discharge pursuant to Section 727(a) of the Bankruptcy Code. ECF 63. Then, on September 15, 2017, the Trustee filed a motion to conduct an examination of the Debtor's accountant, Morison Cogen, LLP ("Morison"), pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), which the Court granted on October 18, 2017. *See* ECF 67; ECF 77. On December 13, 2017, and February 12, 2018, Morison provided documents to the Trustee, including, *inter alia*, the 2016 tax returns for C&M and Pechin. *See* Exs. J-193, J-197. The 2016 C&M tax return reflected "loans from partners" in the amount of $92,469.00,[1] *see* Ex. J-193, and the 2016 Pechin tax return reflected "loans from partners" in the amount of $17,057.00, *see* Ex. J-197.

On July 31, 2018, the Trustee sent a demand letter to C&M at 384 Shurs Lane Philadelphia, PA 19128 ("384 Shurs Lane"), *see* ECF 90 Ex. A Demand Letter, and one to Pechin at 384 Shurs Lane, *see* ECF 91 Ex. A Demand Letter, seeking to recover the

---

[1] The 2016 C&M tax return reflects a lower balance because the Debtor withdrew $50,000 from the C&M Checking Account at the end of November 2016, as referenced *supra*. *See* Exs. J-193, J-218.

$92,468.81[2] C&M appeared to owe the Debtor, and the $17,057.00 Pechin appeared to owe

the Debtor ("Demand Letters").  The Trustee also emailed the Demand Letters to Debtor's

counsel.  Ex. J-119.  Neither C&M nor Pechin received the Demand Letters because they no

longer used the 384 Shurs Lane address at the time of mailing, *see* ECF 90 Ex. A Demand

Letter; ECF 91 Ex. A Demand Letter.  Debtor's counsel neither saw nor opened the July 31,

2018 email attaching the Demand Letters until September 21, 2018, when he was told by

Trustee's counsel that "[Counsel] had sent [him] copies of the demand letters on the day

[Counsel] mailed them."  Ex. J-135.  *See also* ECF 94 Ex. C Email to Debtor's Counsel, Ex.

D Email from Debtor's Counsel.

On September 14, 2018, the Trustee filed an adversary proceeding against C&M ("C&M

Adversary Proceeding") seeking to recover the purported loan payable of $92,468.81 (for

ease of reference, hereinafter referred to as "C&M Advance") pursuant to 11 U.S.C. § 542,

*see* ECF 90 Comp. C&M.  The same day, the Trustee filed another adversary proceeding

against Pechin ("Pechin Adversary Proceeding," collectively with C&M Adversary

Proceeding, "Adversary Proceedings") seeking to recover the purported loan payable of

$17,057.00 (for ease of reference, hereinafter referred to as "Pechin Advance," and

collectively with C&M Advance as "Advances") pursuant to 11 U.S.C. § 542, *see* ECF 91

Comp. Pechin.

In response to the Trustee's complaints, on September 20, 2018, the Debtor filed an

Amended Schedule A/B to reflect the Advances.  ECF 92 Amended Schedule A/B ¶¶ 8, 9.

*See also* Tr. Transcript ¶ 53–54.  In an email dated September 20, 2018, Debtor's counsel

stated the disclosures "were omitted [] inadvertently."  Ex. J-133.  That same day, Trustee's

---

[2] No explanation has been given as to the discrepancy of 19 cents between the C&M demand letter and the C&M 2016 tax return.  *See* Exs. J-193.  This difference is not material for purposes of this opinion.

counsel responded that the Trustee would object to the amended filings because the Debtor

"waited until after [the Trustee] sued these entities to amend the schedules." Ex. J-133. The

Trustee filed an objection to the Debtor's amendment on October 10, 2018 ("Objection"),

ECF 94 Obj. Schedule A/B, which was also served on the U.S. Trustee. ECF 96 Certificate

of Serv.

On November 14, 2018, the Court approved a stipulation among the Trustee, the Debtor,

C&M, and Pechin, where the parties agreed to engage in mediation to resolve the pending

issues related to the Adversary Proceedings and Objection ("Mediation Stipulation"). ECF

100 Stipulation and Agreed Ord. Tolling Certain Statutes of Limitation and Adjourning

Certain Deadlines ¶¶ 1, 3. All parties on the Clerk's service list, including the U.S. Trustee,

were served notice of the Mediation Stipulation. ECF 101 BNC Certificate of Mailing.

On January 14, 2019, the Debtor; the Debtor's wife, Lisa A. Carr ("Mrs. Carr"); the

Trustee; C&M; and Pechin reached a settlement ("Settlement Agreement") as to the

Adversary Proceedings and Objection, and the Trustee filed a Notice of Successful

Mediation on February 28, 2019, ECF 106, which was served on all parties in interest

including the U.S. Trustee, ECF 107 Certificate of Serv.

Meanwhile, on March 5, 2019, the U.S. Trustee emailed the Trustee informing her that he

was reviewing the Debtor's case to determine whether to pursue a revocation of the Debtor's

discharge. Ex. J-158. The Trustee informed the U.S. Trustee that the Debtor and the Trustee

had reached a resolution of the issues relating to the C&M Advance, the Pechin Advance,

and the Objection and "[were] in the process of preparing and filing a 9019 motion." Ex. J-

158. The Trustee's motion to approve the Settlement Agreement pursuant to Federal Rule of

Bankruptcy Procedure 9019 ("Rule 9019") was filed on March 14, 2019 ("9019 Motion").

ECF 111 Motion to Approve Compromise.

Pursuant to the Settlement Agreement's terms, the Debtor would pay the Trustee

$65,000.00.  ECF 111 Motion to Approve Compromise Ex. A ¶ 4.  To settle the Pechin

Adversary Proceeding, the Trustee would allocate $10,122.95 to the Pechin Advance, and to

settle the C&M Adversary Proceeding, the Trustee would allocate $54,877.05 to the C&M

Advance.  ECF 111 Motion to Approve Compromise Ex. A ¶ 4.

The Settlement Agreement also provided that "the Trustee, on her behalf (but only in her

capacity as Trustee) and on behalf of the Estate, any of their successors and assigns and any

other person claiming (now or in the future) through or on behalf of any of them…remise[d],

relinquishe[d], acquit[ted], release[d], and discharge[d] the Carrs … of and from any and all

actions, claims, suits, demands, rights and damages … which were or could have arisen out

of, or directly or indirectly involve, or in connection with, the Pending Adversary

Proceedings and the Settled claims."  ECF 111 Motion to Approve Compromise Ex. A ¶ 6.

The Settlement Agreement's integration clause indicates that the Settlement Agreement is the

entire agreement between the parties and is binding on "the successors and assigns of the

Settling Parties."  ECF 111 Motion to Approve Compromise Ex. A ¶ 8.  The Settlement

Agreement and 9019 Motion were served on all parties in interest, including the U.S.

Trustee, and no parties objected.  Ex. J-162.

The same day the 9019 Motion was filed, the U.S. Trustee emailed Debtor's counsel

asking why the Debtor did not initially disclose the Advances, and the Debtor explained that

in his view these payments were capital contributions and that no loan agreements existed for

these Advances.  Ex. J-163, J-164.  On March 15, 2019, the U.S. Trustee and Debtor's

counsel discussed why the U.S. Trustee was investigating this matter, and the U.S. Trustee

responded that he "w[as] not involved in the litigation or the mediation," and "only [learned]

last week that the debtor failed to disclose the loan receivables [referring to the Advances]."

*See* Ex. J-167.  The U.S. Trustee further noted that he "ha[d] an independent duty to examine

the debtor's conduct."  *See* Ex. J-167.

The Court approved the Settlement Agreement on April 8, 2019, and all parties, including

the U.S. Trustee, were served notice.  ECF 120 Ord. Approving Settlement Agreement.

Nonetheless, from April 15, 2019, to April 24, 2019, the Debtor provided all documents to

the U.S. Trustee which he had previously provided to the Trustee.  *See* Exs. J-181, J-182, J-

183, J-184, J-185.  On September 10, 2019, the U.S. Trustee filed a complaint seeking to

revoke the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(2) ("Discharge Revocation

Adversary Proceeding").  Adv. ECF 1 Comp.

On June 6, 2022, the Court held a trial in connection with the Discharge Revocation

Adversary Proceeding.  During the trial, the Debtor testified regarding, *inter alia,* his

responsibilities within C&M and Pechin, the Advances he made to C&M and Pechin, and the

money he withdrew from the C&M Checking Account.

The Debtor testified that both he and his partner, Mr. Ferraro, were responsible for any

decisions made for C&M and Pechin.  Tr. Transcript ¶ 47.  The Debtor testified that he

handled the business-related responsibilities for C&M, including negotiating contracts and

paying C&M's bills.  *See* Adv. ECF 75-1 ¶ 15; Tr. Transcript ¶¶ 48–49.  Additionally, he

would "inject cash into the entities when needed," Tr. Transcript ¶ 48, such as to assist with

closing on the purchase of new properties on behalf of C&M.  Tr. Transcript ¶ 49.

Regarding the Advances, the Debtor testified he had no copies of checks, cancelled checks, or any other documentation as to his transfer of funds to Pechin or C&M.  Tr. Transcript ¶ 35.  The Debtor further testified that when C&M or Pechin would dispose of an asset and close an LLC, it was his and Mr. Ferraro's understanding that any resulting funds would be applied by "go[ing] down the list, pay[ing] back the first secured lender, obviously the mortgage holder, then any injection of cash that [Debtor] and [his] wife put in and then after that, [he and Mr. Ferraro] would get 50/50."  Tr. Transcript ¶ 49.  The Debtor then stated he had no specific knowledge of how the Advances were classified in the books and records of C&M or Pechin.  Tr. Transcript ¶ 50.

The Debtor testified that up until the Trustee filed the complaints against C&M and Pechin, *see* ECF 90 Comp. C&M; ECF 91 Comp. Pechin, he was unaware the accountants had classified these "cash advances" as loans payable.  Tr. Transcript ¶¶ 52–53.  The Debtor further testified that he never accrued interest on these Advances and that he never received any interest.  Tr. Transcript ¶ 56.  Accordingly, the Debtor strongly disputed the Trustee's and U.S. Trustee's categorization of the Advances as loans payable, arguing instead they constituted capital contributions.[3]

Regarding his withdrawal of $50,000 from the C&M Checking Account, the Debtor testified that when he included the Debtor Checking Account's bank statement in his Original Filing, it referenced the $50,000 payment from C&M.  Tr. Transcript ¶¶ 20, 30.  But he affirmed that "nowhere in the schedules d[id] it show that [he] received the money 30 days prior to filing."  Tr. Transcript ¶¶ 20–21.  He also testified that prior to the payment,

---

[3] The Debtor refers to these as "so-called loans payable" because these were purportedly "additional capital contributions to C&M and Pechin—rather than loans payable."  *See* Adv. ECF 84 ¶ 2 n.2.  While testifying, the Debtor also affirmed that he and his wife provided additional funding to C&M and Pechin beyond their initial capital contributions.  *See* Tr. Transcript ¶ 49.

C&M had completed a long-term project and he and Mr. Ferraro had agreed that "for [his] efforts and for … that financing [he] should be paid a $50,000 fee for all the work [he] put in." Tr. Transcript ¶¶ 58–59. The Debtor further testified that he had no specific knowledge as to how this payment was booked by C&M because he "usually left it up to the accountants." Tr. Transcript ¶ 61.

At the conclusion of the trial, the Court requested post-trial briefing, which both the U.S. Trustee and the Debtor have since provided. As such, this matter is ripe for disposition.

## III.    DISCUSSION

The U.S. Trustee argues that the Debtor's discharge should be revoked under Section 727(d)(2) because he knowingly and fraudulently failed to report his acquisition of or entitlement to certain property which would constitute property of the bankruptcy estate. The four pieces of property referenced by the U.S. Trustee as providing potential bases for revocation are (i) the $50,000 payment from C&M to the Debtor ("$50,000 Payment") from the C&M Checking Account; (ii) the Advances the Debtor made to C&M and Pechin; (iii) the possible accrued interest on the Advances; and (iv) the net proceeds of the sale of C&M's 40th Street Property.

In response, the Debtor argues that (i) the U.S. Trustee is bound by the Settlement Agreement resolving the Adversary Proceedings and Objection and (ii) the facts underlying the U.S. Trustee's case do not constitute grounds for revocation because the Debtor did not acquire or become entitled to acquire any property of the estate during the post-petition period.

Ultimately, as discussed more fully below, while the Court finds that the U.S. Trustee has standing to seek revocation of the Debtor's discharge and was not precluded from bringing

11

the Discharge Revocation Adversary Proceeding by virtue of the Settlement Agreement, the

U.S. Trustee has not established that the Debtor acquired or became entitled to acquire any

post-petition property of the estate which he did not disclose.  Accordingly, the Court must

deny the U.S. Trustee's request to revoke the Debtor's discharge.

### A.  Applicable Legal Principles

The purpose of a bankruptcy discharge is to "release an honest [but unfortunate] debtor

from his or her financial burdens [] to facilitate the debtor's unencumbered 'fresh start.'"  *See*

*In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993).  Under Section 727(d)(2),

> [o]n request of the trustee, a creditor, or the United States trustee, and after
> notice and a hearing, the court shall revoke a discharge granted under
> subsection (a) of this section if—
>
> (2) the debtor acquired property that is property of the estate or became
> entitled to acquire property that would be property of the estate, and
> knowingly and fraudulently failed to report the acquisition of or entitlement
> to such property, or to deliver or surrender such property to the trustee.

*See* 11 U.S.C. § 727(d)(2).

Section 727(d) gives three distinct parties—the trustee, a creditor, or the U.S. Trustee—

the right to seek a revocation of a debtor's discharge.  *See id.*  Section 727(d) must be strictly

construed against the party seeking revocation—here, the U.S. Trustee.  *See In re Helsel*, 326

B.R. 591, 597 (Bankr. W.D. Pa. 2005).  *See also In re Rothmund*, 2021 WL 3890588, at *4

(Bankr. E.D. Pa. Aug. 31, 2021).

To establish a claim, the U.S. Trustee must prove by a preponderance of the evidence that

(i) the Debtor acquired or was entitled to acquire property of the estate; and (ii) that the

Debtor knowingly and fraudulently failed to report, deliver, or surrender that property.  *See*

*In re Carbone*, 613 B.R. 410, 414–15 (Bankr. E.D. Pa. 2020); *In re Thiel*, 579 B.R. 527, 530

(Bankr. D. Minn. 2018), aff'd, 587 B.R. 92 (B.A.P. 8th Cir. 2018).  A failure to report an

entitlement to pre-petition property "does not easily fit within § 727(d)(2)" and the concept

of acquiring property of the bankruptcy estate or an entitlement to property that would be

property of the bankruptcy estate.  *See In re Gault*, No. 03-15724, 2006 WL 2270338, at *3

(Bankr. E.D. Tenn. Aug. 4, 2006).  Plainly, this section applies to post-petition property.  *See*

*In re Carbone*, 613 B.R. at 416–17.

### B.   The Settlement Agreement Does Not Bind the U.S. Trustee to Preclude Him from Bringing a Section 727(d)(2) Action Against the Debtor.

First, while clear that, generally, the U.S. Trustee would have standing to bring the

Discharge Revocation Adversary Proceeding by virtue of Sections 727(d)(2) and (e),[4] the

Debtor claims that the U.S. Trustee "is bound by the release given by the Trustee in

connection with the settlement reached between the Debtor and the Trustee as approved by

this Court."  Adv. ECF 75-4 ¶ 2.  The Debtor, therefore, is asking this Court to bind the U.S.

Trustee to the Settlement Agreement between the Debtor, Mrs. Carr, the Trustee, Pechin, and

C&M.  The Court declines to do so.

For purposes of revocation of discharge, Section 727(d) provides three distinct entities—

the trustee, creditors, and the U.S. Trustee—the right to request revocation of the Debtor's

discharge.  *See* 11 U.S.C. § 727(d); *In re Larson*, 553 B.R. 646, 650 (Bankr. W.D. Mich.

2016).  "[A] [Chapter 7] trustee is not considered an agent, and his [or her] knowledge is not

imputed to other parties to the case," including the U.S. Trustee.  *See In re Fonner*, 573 B.R.

741, 745 (Bankr. S.D. Ohio 2017) (citing *In re Larson,* 553 B.R. 646, 654 (Bankr. W.D.

---

[4] There are only two conditions needed to satisfy the standing requirements for bringing an action under Section 727(d)(2).  First, the request for revocation must be brought by "the trustee, a creditor, or the United States trustee." *See* 11 U.S.C. § 727(d).  It is undisputed that the U.S. Trustee raised this claim.  Second, the request must be made "under subsection (d)(2) . . . before the later of—(A) one year after granting of such discharge; and (B) the date the case is closed."  *See* 11 U.S.C. § 727(e).  Because the case remained open when the U.S. Trustee requested revocation on September 10, 2019, it is undeniable that the action was filed within the statute of limitations.  Meeting the requirements of Section 727(e), the U.S. Trustee has standing to request revocation under Section 727(d)(2).

Mich. 2016)). Thus, the actions of the Trustee here are not binding on the U.S. Trustee

because they are separate legal entities with distinct functions within the bankruptcy system.

The Trustee serves as the "legal representative[] and fiduciar[y] of a debtor's bankruptcy

estate." *See In re Larson*, 553 B.R. at 652. Conversely, the U.S. Trustee holds a supervisory

role, "acting as a 'watchdog over the bankruptcy process.'" *See id.* (citing H.R. Rep. No. 95-

595, at 88 (1977). Ultimately, the Trustee's release of the Debtor in the Settlement

Agreement from any claims *she* may have in connection with the Advances does not bind the

U.S. Trustee—a separate legal entity with an independent right to bring his own revocation

claim under Section 727(d)(2).[5] No evidence was otherwise presented at trial reflecting that

---

[5]    In any event, even if the Settlement Agreement could be found to bind the U.S. Trustee, the Court would not enforce a release which purported to release the Debtor from liability for Section 727(d) claims. The Court recognizes that courts in the Eastern District of Pennsylvania have typically declined to approve settlement agreements which purport to release debtors from challenges to their discharge under Section 727(d). *See In re Levy,* 127 F.2d 62 (3rd Cir.1942) (finding that discharges of a debt are not proper for contractual negotiation." *In re Kasal*, 213 B.R. 922, 929 (Bankr. E.D. Pa. 1997) (holding "that a challenge to a debtor's discharge may not be compromised or settled."). *But see In re Grosse*, 1997 WL 668059 (Bankr. E.D. Pa. Oct. 15, 1997) (denying the settlement but only because there was not full disclosure to the creditors). Courts that follow this approach, including those outside of this District, usually do so based on certain policy considerations.

First, there is a fear that "if a debtor has engaged in wrongful conduct as defined under [Section 727], that debtor is not entitled to the benefits of the Bankruptcy Code." *In re Traxler*, 277 B.R. 699, 702 (Bankr. E.D. Tex. 2002). This rationale focuses on the individual actions of the debtor, guaranteeing that "[u]nder no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge." *In re Moore*, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985). Where there is malintent, courts should avoid blessing the actions of "[a] dishonest debtor [who] may cover up even greater sins than those that gave rise to the complaint in the first place." *In re Vickers*, 176 B.R. 287, 290 (Bankr. N.D. Ga. 1994).

Second, courts also prohibit Section 727 compromises to protect the integrity of the bankruptcy process in its entirety. *See In re Beltran,* 2010 WL 3338533, at *2 (Bankr. N.D. Ill. Aug. 25, 2010) ("Denial of discharge indirectly benefits all of a debtor's creditors, by allowing them to continue collection actions against the debtor."); *In re de Armond*, 240 B.R. 51, 57 (Bankr. C.D. Cal.1999) (stating that a successful objection to discharge "provides a benefit to all creditors in the case, because the debtor's discharge is denied in full"). Whichever of these two reasons courts cite, the result is the same— "discharge is a statutory right undergirded by public policy considerations, [and] it is not a proper subject for negotiation and the exchange of a quid pro quo." *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996). Thus, Section 727 releases tend to be seen as highly disfavored, for good reason. In fact, Section 727 is premised on curbing abuse, as:

> [s]elling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity. A trustee seeking to get paid may coerce an honest debtor into paying something to get rid of a complaint that has no merit. A dishonest debtor may cover up even greater sins than those that gave rise to the complaint in the first place. The conduct described in these hypothetical situations may be criminal bankruptcy fraud.

*In re Vickers*, 176 B.R. at 290.

Furthermore, while not dispositive, the Court observes that in this case, the Debtor acknowledged the U.S. Trustee's investigation prior to, during, and shortly after the Court's approval of the Settlement Agreement,

the Trustee was acting as an agent on the U.S. Trustee's behalf in connection with the

Settlement Agreement to release the Debtor from any claims which *the U.S. Trustee* may

hold against Debtor.

### C. The U.S. Trustee's Failure to Object to the Settlement Agreement Does Not Waive His Right to Seek Revocation of the Debtor's Discharge.

The Debtor also argues that the U.S. Trustee "was [always] … aware of the existence of

the underlying claims in the [A]dversary [P]roceedings," Adv. ECF 84 ¶ 16, and as a result

"waived the right to bring this claim because these issues were resolved by the debtor and the

chapter 7 trustee," Adv. ECF 75-4 ¶ 2.  As the Debtor further explains, the U.S. Trustee

"waived its right to use the matters settled by the [] [T]rustee, to which the [U.S. Trustee] did

not in any way object or even reserve rights, as the basis for the draconian relief of seeking to

revoke the Debtor's discharge."  Adv. ECF 84 ¶ 3.  According to the Debtor, the U.S.

Trustee's actual knowledge of the circumstances leading to the Settlement Agreement

precluded him from requesting revocation once the Settlement Agreement was finalized.

Ultimately, unlike Section 727(d)(1), there is no need to establish that a party requesting

revocation of a debtor's discharge under Section 727(d)(2) was unaware of the Debtor's

fraud prior to the debtor's discharge.  *See generally In re Nandalall*, 434 B.R. 258, 268

(Bankr. N.D.N.Y. 2010) (stating that "[w]hile § 727(d)(1) requires a creditor to prove that he

was unaware of the fraud prior to discharge, this requirement is conspicuously absent from §

727(d)(2).");  *In re Silver*, 367 B.R. 795, 824 (Bankr. D.N.M. 2007), aff'd, 378 B.R. 418

---

undermining any argument that the Debtor has been "prejudiced" by the actions of the U.S. Trustee in bringing this complaint.  ECF 84 ¶ 17.

Accordingly, the Court would be persuaded by the overwhelming disapproval of Section 727 releases, and the fact that the Debtor had the opportunity to specifically address the pursuit of Section 727(d) claims prior to the Court's approval of the Settlement Agreement to find that the Settlement Agreement does not release the Debtor from the U.S. Trustee's claims for revocation of discharge raised in this adversary proceeding.  An opposite ruling paves the way for unscrupulous—but solvent—debtors to wittingly contract away their liability for knowing and intentional fraud which this Court refuses to condone.

(B.A.P. 10th Cir. 2007) (granting creditor's revocation request under Section 727(d)(2) "regardless of when [the creditor] knew or should have known of the possession or control of the property"); *In re Barr*, 207 B.R. 168, 174 (Bankr. N.D. Ill. 1997) (stating that "[a]lthough § 727(d)(1) specifically limits its use to parties that "did not know of ... fraud until after the granting of such discharge," the language of § 727(d)(2) contains no such limitation") (citation omitted).

According to Section 727(d)(2), the sole focus of the Court is on the actions of the Debtor.  That the U.S. Trustee may have had knowledge of the facts that now serve as the grounds for his request for revocation prior to the approval of the Settlement Agreement is irrelevant to the Court's analysis.  The Court is guided by *In re Taylor*, which states:

> [s]ubsection (d)(2) does not require the creditor not to have known of the fraud prior to discharge in order to proceed.  So the question[s] of what the UST, the Trustee and others knew and when they knew it are not relevant here.  Instead, subsection (d)(2) requires only a debtor to have knowingly and fraudulent concealed or failed to have listed property of the estate.

449 B.R. 686, 691–92 (Bankr. E.D. Pa. 2011).

The Court is persuaded that the U.S. Trustee's failure to object to the Settlement Agreement cannot serve as a waiver preventing the U.S. Trustee from bringing a Section 727(d)(2) claim.  The Court need not look beyond the plain language of Sections 727(d) and (e) to arrive at its conclusion.

### D.  None of the U.S. Trustee's Asserted Potential Bases for Revocation of the Debtor's Discharge Satisfy Section 727(d)(2)'s Requirements.

The U.S. Trustee argues that the Debtor's discharge must be revoked under Section 727(d)(2) because the Debtor withheld assets from the bankruptcy estate.[6]  As mentioned

---

[6] Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"; "any interest in property that the trustee recovers under sections 329(b), 363(n), 543, 550, 553, or 723 of this title"; and "[a]ny interest in property that would have been property of the estate if such

*supra,* to prevail under Section 727(d)(2), the U.S. Trustee must first prove that the Debtor acquired property or became entitled to acquire property of the bankruptcy estate during the post-petition period. *See* 11 U.S.C. § 727(d)(2); *In re Carbone*, 613 B.R. at 414–17.

The four pieces of property referenced by the U.S. Trustee as supporting revocation are (i) the $50,000 Payment to the Debtor from the C&M Checking Account; (ii) the Advances the Debtor made to C&M and Pechin; (iii) the possible accrued interest on the Advances; and (iv) the net proceeds of the sale of C&M's 40th Street Property. Because none of these assets constitutes property of the estate that the Debtor acquired or became entitled to acquire post-petition and did not disclose, the U.S. Trustee's attempt to revoke the Debtor's discharge must fail.

### i.        The $50,000 Payment

The U.S. Trustee argues that the Debtor's failure to initially disclose the pre-petition $50,000 Payment attributable to the Debtor's withdrawal of C&M's funds from the C&M Checking Account and transferred to the Debtor Checking Account justifies revocation of discharge under Section 727(d)(2). *See* ECF 83, Mem. in Lieu of Brief in Support of Revocation of Debtor's Discharge (Mem. in Support) ¶ 9. For a viable Section 727(d)(2) action, these funds must have been acquired after the Debtor's bankruptcy filing. *See In re Carbone*, 613 B.R. at 416–17. Because the Debtor acquired this $50,000 Payment on November 30, 2016—prior to the December 29, 2016, chapter 7 filing—the U.S. Trustee's reliance on it as a basis for revocation of discharge under Section 727(d)(2) is misplaced. Section 727(d)(2) "does not provide grounds for revocation of a debtor's discharge where …

---

interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days of such date - by bequest, devise, or inheritance…" 11 U.S.C. §541(a)(1), (3), (a)(5)(A).

the failure to report assets relate[s] to property of the estate the debtor had an interest in as of the commencement of the case." *See In re Carbone*, 613 B.R. at 416–17.  Consequently, this $50,000 Payment cannot serve as a basis to revoke the Debtor's discharge pursuant to Section 727(d)(2).

### ii.    The Advances to C&M and Pechin

The U.S. Trustee then argues that the Debtor's failure to initially disclose the monies purportedly owed to the Debtor from C&M and Pechin on account of the Advances provides a basis to revoke the Debtor's discharge.  *See* Mem. in Support ¶¶ 9–10, 11–12.  Assuming *arguendo* that these Advances do in fact constitute loans, the U.S. Trustee's reliance on these Advances is still misplaced because only property that the Debtor became entitled to acquire post-petition can serve as a basis for a Section 727(d)(2) revocation.  *See In re Carbone*, 613 B.R. at 416–17.  Assuming these Advances constitute loans, they are loans which the Debtor made to C&M and Pechin in 2015, and thus under the Operating Agreements, the obligation to repay the Debtor would have arisen in 2015, prior to the Debtor's December 29, 2016, bankruptcy filing.  Because the right to receive repayment on the Advances would have arisen pre-petition, it would not constitute property of the estate the Debtor acquired in the post-petition period.  Consequently, these Advances cannot support revocation under Section 727(d)(2).

### iii.    Any Accrued Interest on the Advances

The U.S. Trustee also argues that the Debtor's failure to fulfill his disclosure obligations respecting interest which accrued post-petition on the Advances as provided for by Section 4.03 of the Operating Agreements supports revocation under Section 727(d)(2).  *See* Mem. in Support ¶ 9.

Assuming *arguendo* that the Operating Agreements govern the treatment of the

Advances,[7] the U.S. Trustee's argument still fails because any interest accrued pursuant to

Section 4.03 of the Operating Agreements would not qualify as post-petition property.  The

key question to determine whether property constitutes pre- or post-petition property is

"when the right to receive those [interest] payments arose."  *See In re Helsel*, 326 B.R. 591,

599 (Bankr. W.D. Pa. 2005).  Any entitlement the Debtor may have to interest on the

Advances under Section 4.03 of the Operating Agreements arose in 2015 when the Advances

were made per the plain language of Section 4.03, prior to the December 29, 2016,

bankruptcy filing.  Thus, the entitlement to any interest on the Advances did not arise post-

petition as required for revocation of discharge under Section 727(d)(2).

### iv.      Net Proceeds from the Sale of C&M's Property

Finally, the U.S. Trustee appears to suggest that treatment of C&M's net proceeds from

the sale of the 40th Street Property justifies revoking the Debtor's discharge under Section

727(d)(2).  The dispositive issue here is whether the property of C&M could be found to be

"property of the debtor," 11 U.S.C. §§ 541, 727(d)(2), and not that of a separate legal entity,

here C&M.  It is not property of the debtor, and thus the U.S. Trustee's argument is without

merit.

As a threshold matter, members of a limited liability company ("LLC") do not have any

interest in the specific assets owned by the LLC, *see In re Hart*, 530 B.R. 293, 301 (Bankr.

E.D. Pa. 2015).  C&M is an LLC in which the Debtor and Mr. Ferraro each hold a 50%

interest.  ECF 92, Amended Schedule A/B, ¶ 6.  The 40th Street Property was one of two

---

[7] The Debtor disputes that the Operating Agreements govern these transactions, noting that this was not the arrangement between him and Mr. Ferraro, and that he never received or expected to receive interest payments on those Advances.  *See* Adv. ECF 84 ¶ 12–14; Tr. Transcript ¶ 56.  It is apparent that corporate formalities were not observed at C&M or Pechin.

properties owned by C&M as of the petition date. At the Continued Meeting of Creditors, the Debtor testified that C&M sold the 40th Street Property in February 2017, and later used the net proceeds from the sale to purchase two additional properties. Because the net proceeds from the sale of the 40th Street Property are owned by C&M, a non-debtor third party, they are "not [] property of the estate," *In re Coenen*, 487 B.R. 539, 541 (Bankr. W.D. Wisc. 2012). Although the Debtor's estate includes his ownership interest in C&M, "it does not include the assets owned by [C&M]." *See id.* This is consistent with the general principle that "bankruptcy protections are intended for [] debtors and not third-party entities, even wholly owned third parties," *see id.*

Furthermore, C&M's sale of the 40th Street Property was actually disclosed at the Continued Meeting of Creditors on May 1, 2017, less than two months after the sale, and was corroborated by the Settlement Statement provided to the Trustee. The Settlement Statement, dated February 15, 2017, reflected the sale price, the payment of Bryn Mawr Trust mortgages, and the net amount paid to C&M—a non-debtor third party—at closing. *See* Exs. J-75, J-203. Because the net proceeds related to the sale of the 40th Street Property would not be included in the *Debtor's* bankruptcy estate and because the sale of the 40th Street Property and net proceeds were in fact disclosed to the Trustee shortly after the sale, and no demand was ever made for their turnover, the Debtor's conduct in connection with the net proceeds from this sale cannot support a Section 727(d)(2) revocation.

## IV.    CONCLUSION

Based on the foregoing, the Court concludes Debtor's discharge should not be revoked pursuant to 11 U.S.C. Section 727(d)(2).

Date: November 10, 2022

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge